Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

Sean N. Payne, Esq.
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave., Suite 253-A213
Las Vegas, NV 89123
Phone: (702) 952-2733
FAX: (702) 462-7227
Email: seanpayne@spaynelaw.com

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorneys for Plaintiff
*Victoria M. Stath*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

|  |  |
|---|---|
| VICTORIA M. STATH, | Civil Action No.: |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, ET SEQ.** |
| EQUIFAX INFORMATION SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC; and TRANS UNION LLC, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendants regularly conduct business in this District.

## INTRODUCTION

3.      The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

4.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.  Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

5.      Victoria M. Stath ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Equifax Information Services, LLC ("Equifax"), Trans Union, LLC ("TransUnion"), and Experian Information Solutions, Inc. ("Experian") (or jointly as

"Defendants") with regard to erroneously reporting incomplete and inaccurate credit information.

6.      Defendants failed to properly investigate Plaintiff's credit report disputes, damaging Plaintiff's creditworthiness and "failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" as statutorily mandated pursuant to 15 U.S.C. §1681e(b).

7.      Further, Defendants also failed to comply with their duties under 15 U.S.C. §1681i(a)(1), which requires that credit reporting agencies "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."

## **PARTIES**

8.      Plaintiff, Victoria M. Stath, is an adult individual and at all relevant times has been residing in Clark County, Nevada.

9.      Plaintiff is, and at all time relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c).

10.     Defendant Equifax is Georgia limited liability corporation with its principal place of business in Georgia and doing business in Nevada.

11.     Defendant Equifax is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f).

12.     Defendant Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

13.     Defendant Experian is a corporation with its principal place of business in Ohio and doing business in Nevada

14.     Defendant Experian is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f).

15.     Defendant Experian is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

16.     Defendant TransUnion is a Delaware limited liability corporation doing business in Nevada.

17.     Defendant TransUnion is a "Consumer Reporting Agency" (or "CRA"), as that term is defined by 15 U.S.C. § 1681a(f).

18.     Defendant TransUnion is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

## GENERAL ALLEGATIONS

19.     On or about August 5, 2011, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Nevada pursuant to 11 U.S.C. § 1301 *et seq*. Plaintiff's case was assigned Case Number 11-22473-abl (the "Chapter 13" or "Bankruptcy").

20.     At the time the Bankruptcy was filed, Plaintiff owned real property located at 2367 Brockton Way, Henderson, Nevada 89074 (the "Property").

21.     The Property is subject to a mortgage loan and secured by a deed of trust serviced by Wells Fargo ("WFHM Debt").

22.     Plaintiff included the WFHM Debt in her Bankruptcy Schedules, and Wells Fargo, or its predecessor in interest, received notice of the Bankruptcy.

23.     On October 27, 2016, the bankruptcy court entered an order confirming Plaintiff's Chapter 13 Plan (the "Confirmed Chapter 13 Plan" or "Confirmation Order").

24.     Plaintiff was current on her pre-petition obligations related to the WFHM Debt when she filed her Bankruptcy.

25.     Plaintiff made all payments required under the terms of the Confirmed Chapter 13 Plan, which included ongoing, post-petition contract installment payments directly to Wells Fargo, or its predecessor, on the WFHM Debt.

26.     Further, on or about August 2, 2016, the Chapter 13 Trustee filed a Notice of Final Cure Payment ("NFC") indicating that the amount required to cure the pre-petition default, if any, on the WFHM Debt was paid in full.

27.     On or about August 17, 2016, Wells Fargo filed a Response to Notice of Final Cure Payment, confirming both that (i) Plaintiff paid in full the amount required to cure the pre-petition default, if any, on the WFHM Debt, and (ii) that Plaintiff was current on all post-petition payments to Wells Fargo on the WFHM Debt.

28.     On or about October 27, 2016, after Plaintiff successfully completed all payments required to all creditors under the Confirmation Order, including payments to Wells Fargo or its predecessor, Plaintiff received her bankruptcy discharge per entry of order by the Bankruptcy Court (the "Discharge").

29.     Since completing her Bankruptcy, Plaintiff has remained current on the WFHM Debt, and continues to make timely payments to Wells Fargo on the WFHM Debt through present date.

30.     Further, while the automatic stay was in effect during the Bankruptcy, it was illegal and inaccurate for any creditor, debt collector or mortgage servicer to report any post-Bankruptcy derogatory collection information, which was inconsistent with the orders entered by the Bankruptcy Court.  To this end, as evidenced by 1) the Confirmation Order, 2) Discharge and 3) lack of any orders entered by the Court during the pendency of the Plaintiff's Chapter 13 filing, Plaintiff made timely payments to each and every creditor after filing Chapter 13 as required by law to present.

31.     To the extent that Plaintiff's creditors, such as Wells Fargo, elected to furnish data to a CRA consistent with the terms of the Confirmation Order, such data should have been included in Plaintiff's "consumer file."

32.     Pursuant to 15 U.S.C. §1681g(a)(1), "[e]very consumer reporting agency shall, upon request, clearly and accurately disclose to the consumer…[a]ll information in the consumer's

file at the time of the request," subject to the Plaintiff providing "proper identification" pursuant to 15 U.S.C. §1681h(a)(1).

33.     "The term 'file', when used in connection with information on any consumer, means all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored."  15 U.S.C. §1681a(g).

34.     In the current matter, the Defendants failed to comply with their statutory obligation to provide Plaintiff all information in Plaintiff's consumer file thereby violating the above defined statutory obligations.

35.     Additionally, the Defendants' conduct described herein also failed to comply with the Consumer Data Industry Association ("CDIA")'s Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

36.     The CDIA publishes the Metro 2 reporting standards to assist furnishers and CRAs (like the Defendants) with their compliance requirements under the FCRA.

37.     Courts rely on such guidance to determine furnisher liability.  *See e.g. In re Helmes*, 336 B.R. 105, 107 (Bankr. E.D. Va. 2005).

38.     Upon information and belief, Defendants herein adopted and at all times relevant implemented the Metro 2 format.

39.     Upon information and belief, each Defendant named herein adopted the Metro 2 reporting standards and at all times relevant implemented the Metro 2 format as an integral aspect of their respective duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

40.     The Metro 2 format guidelines for credit reporting are nearly identical for reports made during the "Month BK Filed," "Months Between Petition Filed and BK Resolution," "Plan Confirmed" and, in this case "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" for Chapter 13 Debtors and furnishers who choose to report post-bankruptcy credit information to CRAs.  *See e.g.*, 2015 CDIA

Credit Reporting Resource Guide ("2015 Metro 2"), Frequently Asked Question 28(a), at pages 6-21 through 6-22.

41.     Thus, many of the consumer reporting fields should be reported the same way both during and after a bankruptcy proceeding, *id.*, with the following relevant exceptions:

a. <u>Current Balance</u>

    i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the **outstanding balance amount**. *Id.*

    ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 plan balance, which should decline as payments are made**." *Id.* at 6-22.

    iii. And, for Current Balance reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**."

    iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the "*Outstanding balance amount*." *Id.*

b. <u>Scheduled Monthly Payment Amount</u>:

    i. For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount.**" *Id.* at 6-21.

    ii. However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**." *Id.* at 6-22.

    iii. And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**." *Id.*

    iv. Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage) Metro 2 instructs the furnisher to report the outstanding balance amount "*updated contractual monthly payment amount.*"

c. <u>Account Status</u>:

    i. For the "Month BK Filed", "Months Between Petition Filed & BK Resolution," "Plan Confirmed" and "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report the "**status at time of petition**."

    ii. However, for the "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example:

mortgage)" Metro 2 instructs the furnisher to report "***status that applies.***" *Id*. at 6-22.

   d.   <u>Payment History:</u>

    i.   For the "Month BK Filed" and "Months Between Petition Filed & BK Resolution," Metro 2 instructs the furnisher to report the "**contractual monthly payment amount**." *Id*. at 6-21.

    ii.   However, for the "Plan Confirmed" period, Metro 2 instructs the furnisher to report the "**Chapter 13 Payment Amount**." *Id*. at 6-22.

    iii.   And, for Scheduled Monthly Payment Amount reporting when "Plan Completed – All payments made according to plan – no further obligation," Metro 2 instructs the furnisher to report a current balance of "**Zero**." *Id*.

    iv.   And, as applicable here, for "Plan Completed – All payments made according to plan – consumer continues to make payments on Secured Debt (example: mortgage)" Metro 2 instructs the furnisher to report the outstanding balance amount "***first month, increment first position with value 'D'; in subsequent months, increment based on prior month's status.***"

42.    Metro 2 Format's instructions require identical reporting for FAQ 28a's field "Date of Account Information", which should equal the "current month's date."

43.    Despite Metro 2 Format's instructions, the Defendants named herein failed to conform to the Metro 2 Format when reporting on Plaintiff's accounts after Plaintiff filed Bankruptcy as further set forth below.

44.    In turn, the Defendants rereported inaccurate and incomplete information, thus violating their duty to follow reasonable procedures to assure maximum possible accuracy under 15 U.S.C. §1681e(b) when providing a Plaintiff a consumer file.

45.    To this end, the incomplete reporting provided to the Plaintiff as described herein departed from the credit industry's own reporting standards, and was not only inaccurate and incomplete, but also materially misleading under the CDIA's standards as well.

46.    A "materially misleading" statement is concerned with omissions to credit entries, that in context create misperceptions about otherwise may be factually accurate data. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009).

47.     Upon information and belief, the failure to accurately report complete information about an account, particularly positive payment history on a mortgage account, significantly impacts an individual's credit score.

48.     By electing to suppress positive payment history relating to an account on which an individual is making regular, timely payments, CRAs create misleading impressions on future credit decision makers, and deprive individuals of the benefit to their credit scores which stem from making regular, timely payments.

### THE EQUIFAX VIOLATIONS

### Equifax Failed to Reinvestigate Plaintiff's Dispute Regarding Wells Fargo Card Services Account No. 4465*

49.     In an Equifax credit report dated December 5, 2016, Wells Fargo inaccurately reported that Plaintiff still owed an outstanding balance of $7,555 even though Wells Fargo's debt was discharged in the Bankruptcy.  It was therefore inaccurate for Wells Fargo to report a balance any greater than $0.

50.     Wells Fargo also inaccurately reported that Plaintiff was "past due" in the amount of $7,555.  Since Plaintiff discharged Wells Fargo's debt, there was a $0 balance due at the time Wells Fargo reported the past due balance.  Accordingly, reporting the past-due balance was inaccurate resulting from the Bankruptcy discharge.

51.     Wells Fargo also reported an account "status" of "120+ days past due." This was inaccurate since Plaintiff performed all obligations required under the Chapter 13 Plan and obtained a discharge.  Moreover, Wells Fargo was paid according to the Chapter 13 Plan by the Chapter 13 Trustee.

52.     Wells Fargo also reported amounts past due ranging from $9,255 in December 2014 to $7,555 in October 2016, and reported that Plaintiff was "180 days past due" each month during this timeframe even though this account was included in Plaintiff's Bankruptcy, the terms of repayment were modified by the Confirmation Order, and Wells Fargo was paid according to the Chapter 13 Plan by the Chapter 13 Trustee.

53. Wells Fargo also reported that it "charged off" the account on multiple occasions from December 2012 through October 2016. This was inaccurate since Wells Fargo could only report that it charged off the account a single time.

54. Plaintiff regularly made her plan payments to the Chapter 13 Trustee, who then made pro rata distributions to Plaintiff's unsecured creditors, including Wells Fargo, pursuant to the terms of the Confirmed Chapter 13 Plan. It was therefore inaccurate for Wells Fargo to report this account as past due during the pendency of Plaintiff's Bankruptcy, and particularly after entry of the Confirmation Order.

55. On or about January 24, 2017, pursuant to 15 U.S.C. § 1681i(a)(2), Plaintiff disputed Wells Fargo's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Wells Fargo.

56. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter #1"), requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

57. Plaintiff also requested that Equifax send a copy of the corrected consumer disclosure.

58. Upon information and belief, upon receiving the Equifax Dispute Letter #1, Equifax failed to notify Wells Fargo of the dispute pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

59. Upon information and belief, Equifax also failed to conduct a reasonable reinvestigation of the dispute in violation of 15 U.S.C. § 1681i(a)(1).

60. As such, on March 24, 2017, Plaintiff once again disputed Wells Fargo's reported information regarding its reported obligation by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Wells Fargo.

61. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter #2"), notifying Equifax of its failure to investigate Plaintiff's dispute, and once

again requesting the above inaccurate and incorrect derogatory information be removed, corrected or deleted.

62.     Upon information and belief, upon receiving the Equifax Dispute Letter #2, Equifax yet again failed to notify Wells Fargo of the dispute pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

63.     Upon information and belief, Equifax again failed to conduct a reasonable reinvestigation of the dispute in violation of 15 U.S.C. § 1681i(a)(1).

64.     A reasonable reinvestigation by Equifax would have resulted in updating the Wells Fargo Card Services tradeline to reflect a $0 balance and discharged in bankruptcy.

65.     Upon information and belief, due to Equifax's failure to reasonably investigate Plaintiff's dispute, Equifax continued to report the inaccurate derogatory information relating to the discharged debt on Plaintiff's report notwithstanding Plaintiff's dispute notifying Equifax of the inaccurate information in violation of 15 U.S.C. §§ 1681e(b) and 1681i(a).

66.     As a result of Equifax's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation out-of-pocket expenses in challenging the Equifax's wrongful representations on multiple occasions, damage to her creditworthiness, and emotional distress.

67.     Equifax's continued inaccurate and negative reporting of the discharged debt in light of its respective knowledge of the actual errors was willful.  Equifax is therefore liable to Plaintiff for punitive damages, actual damages, statutory damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

68.     Alternatively, Equifax's continued inaccurate and negative reporting of the discharged debt regardless of its respective knowledge of the actual error was negligent. Equifax is therefore liable to Plaintiff for actual damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681o.

/ / /

/ / /

**Equifax Failed to Report Complete Information about**
**Wells Fargo Home Mortgage Account No. 708-0482\***

69.     Plaintiff requested her consumer credit file from Equifax, and Equifax thereafter mailed Plaintiff an incomplete consumer file dated December 5, 2016 (the "Equifax Credit File").

70.     On information and belief, Equifax failed to provide a "complete" and "accurate" Equifax Credit File to Plaintiff.

71.     On information and belief, Equifax "suppressed" positive data being furnished from Wells Fargo, and as a result, deprived Plaintiff the benefit of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.

72.     Alternatively, Equifax failed to report timely mortgage payments on the WFHM Debt related to the Property reported by Wells Fargo.

73.     This failure caused Plaintiff's Equifax Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Wells Fargo.

74.     Specifically, Wells Fargo furnished positive credit data to Equifax stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations for January 2014 through September 2015; and January 2016 through March 2017 (the "Positive Suppressed Data").

75.     However, Equifax failed to include the Positive Suppressed Data in Plaintiff's Credit File.

76.     Accordingly, on or about May 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Equifax's incomplete reporting by notifying Equifax, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Equifax Credit File.

77.     Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax (the "Equifax Dispute Letter #3"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

78.     The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Wells Fargo to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

79.     In part, the Equifax Dispute Letter #3 stated:

> Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and attached documents, I have a mortgage account with Wells Fargo Home Mortgage (**Account No. 0482572229**) and you are not reporting complete information about this account.  Specifically, I obtained information from Wells Fargo Home Mortgage in which Wells Fargo Home Mortgage provided proof (attached) it furnished to you that I was "current" with my payments from January 26, 2014 through September 8, 2015; and January 7, 2016 through March 7, 2017 (and present).  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

> You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

> Please make these corrections immediately and send me a copy of the corrected consumer credit report.

80.     The RFI Response, which Plaintiff included with her Equifax Dispute Letter #3, clearly identified the Positive Suppressed Data, which Equifax failed to include in Plaintiff's Equifax Credit File.

81.     After receiving the Equifax Dispute Letter #3, Equifax was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

82.     As part of its reinvestigation, Equifax had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with his dispute.

83.     On or about June 18, 2017, Plaintiff received notification from Equifax through its "reinvestigation" (Equifax Report No. 7142074442) that Equifax received notice of Plaintiff's

dispute pursuant to 15 U.S.C. § 1681i(a)(6).  However, Equifax failed to correct Plaintiff's Equifax Credit File to include the Positive Suppressed Data in Wells Fargo's updated tradeline.

84.     A reasonable reinvestigation by Equifax would have resulted in updating the Wells Fargo tradeline to include the Positive Suppressed Data.

85.     Equifax therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Equifax Credit File.

86.     Equifax failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. §1681i(a).

87.     Equifax re-reported the incomplete and inaccurate misleading information on Plaintiff's Equifax Credit File.  Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from the Plaintiff's Equifax Credit File.

88.     Equifax, therefore, upon receipt of Plaintiff's dispute, failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a).

89.     Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

90.     Plaintiff's efforts to correct Equifax's incomplete and inaccurate reporting were fruitless.

91.     Equifax was provided evidence of it's illegal suppression, and knowingly elected to not make the requested corrections to Plaintiff's Equifax Credit File.

92.     Equifax's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

93.     By reporting incomplete and inaccurate account information relating to the Wells Fargo' Home Mortgage Account after notice and confirmation of its errors, Equifax failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

## THE EXPERIAN VIOLATIONS

### Experian Failed to Report Complete Information about
### Wells Fargo Home Mortgage Account No. 708-0482*

94.     Plaintiff requested her consumer credit file from Experian, and Experian thereafter mailed Plaintiff an incomplete consumer file dated December 5, 2016 (the "Experian Credit File").

95.     On information and belief, Experian failed to provide a "complete" and "accurate" Experian Credit File to Plaintiff.

96.     On information and belief, Experian "suppressed" positive data being furnished from Wells Fargo, and as a result, deprived Plaintiff the benefit of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.

97.     Alternatively, Experian failed to report timely mortgage payments on the WFHM Debt related to the Property reported by Wells Fargo.

98.     This failure caused Plaintiff's Experian Credit File to include materially misleading omissions, which in context created misperceptions about the Plaintiff's timely (yet unreflected) monthly payments to Wells Fargo.

99.     Specifically, Wells Fargo furnished positive credit data to Experian stating that the Plaintiff's account was "current" with all ongoing monthly payment obligations for January 2014 through September 2015; and January 2016 through March 2017 (the "Positive Suppressed Data").

100.    However, Experian failed to include the Positive Suppressed Data in Plaintiff's Experian Credit File.

101.    Accordingly, on or about May 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed Experian's incomplete reporting by notifying Experian, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's Experian Credit File.

102.    Specifically, Plaintiff sent a letter, certified, return receipt, to Experian (the "Experian Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

103.    Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Wells Fargo to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

104.    In part, the Experian Dispute Letter stated:

> Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and attached documents, I have a mortgage account with Wells Fargo Home Mortgage (**Account No. 0482572229**) and you are not reporting complete information about this account.  Specifically, I obtained information from Wells Fargo Home Mortgage in which Wells Fargo Home Mortgage provided proof (attached) it furnished to you that I was "current" with my payments from January 26, 2014 through September 8, 2015; and January 7, 2016 through March 7, 2017 (and present).  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

> You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

> Please make these corrections immediately and send me a copy of the corrected consumer credit report.

105.    The RFI Response, which Plaintiff included with her Experian Dispute Letter, clearly identified the Positive Suppressed Data, which Experian failed to include in Plaintiff's Experian Credit File.

106.    After receiving the Experian Dispute Letter, Experian was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

107.    As part of its reinvestigation, Experian had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with her dispute.

108.    On or about June 14, 2017, Plaintiff received notification from Experian through its "reinvestigation" (Experian Report No. 0706-1749-91) that Experian received notice of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(6), and verified the account as "updated." However, Experian failed to correct Plaintiff's Experian Credit File to include the Positive Suppressed Data in Wells Fargo's "updated" tradeline.

109.    A reasonable reinvestigation by Experian would have resulted in updating the Wells Fargo tradeline to include the Positive Suppressed Data.

110.    Experian therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's Experian Credit File.

111.    Experian failed to review all relevant information provided by Plaintiff in the dispute to Experian, as required by and in violation of 15 U.S.C. §1681i(a).

112.    Experian re-reported the incomplete and inaccurate misleading information on Plaintiff's Experian Credit File.  Specifically, the Positive Suppressed Data continued to remain suppressed and willfully omitted from Plaintiff's Experian Credit File.

113.    Failing to report and/or rereport the Positive Suppressed Data also constituted a violation of 15 U.S.C. § 1681g(a) because the lack of clarity and numerous omissions in the information reported and rereported has the tendency to confuse ordinary consumers like Plaintiff.

114.    Plaintiff's efforts to correct Experian's incomplete and inaccurate reporting were fruitless.

115.    Experian was provided evidence of it's illegal suppression, and knowingly elected to not make the requested corrections to Plaintiff's Experian Credit File.

116.    Experian's continued incomplete and inaccurate reporting of the Positive Suppressed Data in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

117.    By reporting incomplete and inaccurate account information relating to the Wells Fargo' Home Mortgage Account after notice and confirmation of its errors, Experian failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

## THE TRANSUNION VIOLATIONS

### TransUnion Failed to Report Complete Information about Wells Fargo Home Mortgage Account No. 708-0482*

118.    Plaintiff requested her consumer credit file from TransUnion, and TransUnion thereafter mailed Plaintiff an incomplete consumer file dated December 5, 2016 (the "TransUnion Credit File").

119.    On information and belief, TransUnion failed to provide a "complete" and "accurate" TransUnion Credit File to Plaintiff.

120.    On information and belief, TransUnion "suppressed" positive data being furnished from Wells Fargo, and as a result, deprived Plaintiff the benefit of positive credit data which would have provided Plaintiff a true "fresh start" after filing Bankruptcy.

121.    Alternatively, TransUnion failed to report timely mortgage payments on the WFHM Debt related to the Property reported by Wells Fargo.

122.    This failure caused Plaintiff's TransUnion Credit File to include materially misleading omissions, which in context created misperceptions about Plaintiff's timely (yet unreflected) monthly payments to Wells Fargo.

123.    Specifically, Wells Fargo furnished positive credit data to TransUnion stating that Plaintiff's account was "current" with all ongoing monthly payment obligations for January 2014 through September 2015; and January 2016 through March 2017 (the "Positive Suppressed Data").

124.    However, TransUnion failed to include the Positive Suppressed Data in Plaintiff's TransUnion Credit File.

125.    Accordingly, on or about May 12, 2017, pursuant to 15 U.S.C. §1681i(a)(2), Plaintiff disputed TransUnion's incomplete reporting by notifying TransUnion, in writing, of the incomplete and inaccurate credit information contained in Plaintiff's TransUnion Credit File.

126.    Specifically, Plaintiff sent a letter, certified, return receipt, to TransUnion (the "TransUnion Dispute Letter"), requesting the above incomplete and misleading information omissions be corrected to include the Positive Suppressed Data.

127.    The Plaintiff included proof of the Positive Suppressed Data, which was provided directly by Wells Fargo to Plaintiff in response to Plaintiff's request for information pursuant to 12 C.F.R.§1024.36 (the "RFI Response").

128.    In part, the TransUnion Dispute Letter stated:

Your company provided me with a consumer credit report which is attached.  As you can see from your credit report and attached documents, I have a mortgage account with Wells Fargo Home Mortgage (**Account No. 0482572229**) and you are not reporting complete information about this account.  Specifically, I obtained information from Wells Fargo Home Mortgage in which Wells Fargo Home Mortgage provided proof (attached) it furnished to you that I was "current" with my payments from January 26, 2014 through September 8, 2015; and January 7, 2016 through March 7, 2017 (and present).  Reporting this information, is necessary to provide "complete" information about this tradeline, and will also likely increase my credit score significantly given the "positive" payment history.

You are impermissibly suppressing this information and depriving me of *complete* and accurate credit reporting furnished about this account.  Accordingly, please stop suppressing this information.  Your failure to report this data is lowering my credit score.

Please make these corrections immediately and send me a copy of the corrected consumer credit report.

129.    The RFI Response, which Plaintiff included with her TransUnion Dispute Letter, clearly identified the Positive Suppressed Data, which TransUnion failed to include in Plaintiff's TransUnion Credit File.

130.    After receiving the TransUnion Dispute Letter, TransUnion was required to conduct a reasonable reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

131.    As part of its reinvestigation, TransUnion had a duty to review and consider all relevant information provided by Plaintiff pursuant to 15 U.S.C. § 1681i(a)(4), such as the RFI Response and Positive Suppressed Data that Plaintiff included with her dispute.

132.    Upon information and belief, upon receiving the TransUnion Dispute Letter, TransUnion failed to notify Wells Fargo of the dispute pursuant to its duties to do so under 15 U.S.C. § 1681i(a)(2).

133.    Upon information and belief, TransUnion also failed to conduct a reasonable reinvestigation of the dispute in violation of 15 U.S.C. § 1681i(a)(1).

134.    Upon information and belief, TransUnion also failed to review all relevant information provided by Plaintiff in the TransUnion Dispute Letter, as required by and in violation of 15 U.S.C. § 1681i(a).

135.    A reasonable reinvestigation by TransUnion would have resulted in updating the Wells Fargo tradeline to include the Positive Suppressed Data.

136.    Upon information and belief, rather than conduct a reasonable reinvestigation, TransUnion took a "one size fits all" approach and deleted the Wells Fargo tradeline altogether, thus depriving Plaintiff of the benefit of the Positive Suppressed Data, and completely ignoring the purpose of Plaintiff's TransUnion Dispute Letter.

137.    TransUnion therefore failed to conduct a reasonable reinvestigation as required by 15 U.S.C. §1681i(a), and wrongly continued suppressing complete and accurate information in connection with Plaintiff's TransUnion Credit File.

138.    Upon information and belief, TransUnion continues to re-report the incomplete and inaccurate misleading information on Plaintiff's TransUnion Credit File by continuing to suppress and willfully omit the Wells Fargo tradeline and related Positive Suppressed Data from Plaintiff's TransUnion Credit File.

139.    Plaintiff's efforts to correct TransUnion's incomplete and inaccurate reporting were fruitless.

140.    TransUnion was provided evidence of it's illegal suppression, and upon information and belief, knowingly elected to delete the Wells Fargo tradeline instead of making the requested corrections to Plaintiff's TransUnion Credit File.

141.    TransUnion's actions in deleting the Wells Fargo tradeline in light of its knowledge of the actual errors and omissions was willful.  Plaintiff is, accordingly, eligible for statutory damages, punitive damages, and attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

142.    By deleting the Wells Fargo tradeline after notice and confirmation of its errors, TransUnion failed to take the appropriate measures as required under 15 U.S.C. §§1681i(a) and 1681e(b), respectively.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *ET SEQ*. (FCRA)

143.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

144.    The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

145.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

146.    As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendants.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests the Court grant Plaintiff the following relief against

Defendants:

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681 ET SEQ. (FCRA)**

- an award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1);

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against Defendant for each incident of negligent noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

///

///

///

///

///

///

///

22

## TRIAL BY JURY

147.    Pursuant to the seventh amendment to the Constitution of the United States of America,

Plaintiff is entitled to, and demands, a trial by jury.

Dated: August 11, 2017

Respectfully submitted,

By      /s/ David H. Krieger, Esq.
        David H. Krieger, Esq.
        Nevada Bar No. 9086
        HAINES & KRIEGER, LLC
        8985 S. Eastern Ave., Suite 350
        Henderson, NV 89123

        Matthew I. Knepper, Esq.
        Nevada Bar No. 12796
        Miles N. Clark, Esq.
        Nevada Bar No. 13848
        KNEPPER & CLARK LLC
        10040 W. Cheyenne Ave., Suite 170-109
        Las Vegas, NV 89129

        Sean N. Payne, Esq.
        Nevada Bar No. 13216
        PAYNE LAW FIRM LLC
        9550 S. Eastern Ave., Suite 253-A213
        Las Vegas, NV 89123

        *Attorneys for Plaintiff*